RECEIVED
IN ALEXANDRIA, LA.

MAY 1   2012

TONY ~. ~~~ CLERK
BY_____
            DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

ZELDA LOVETTE ANDERSON,              CIVIL ACTION
          Appellant                  1:11-cv-1674

VERSUS

U.S. COMMISSIONER OF SOCIAL          JUDGE DEE D. DRELL
SECURITY,                            MAGISTRATE JUDGE JAMES D. KIRK
          Appellee

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

On June 25, 2008, Zelda Lovette Anderson ("Anderson") filed applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") alleging a disability onset date of May 1, 2006 (Tr. pp. 122, 124) due to "depression, possible schizophrenia, agoraphobia" (Tr. p. 145). Those applications were denied by the Social Security Administration ("SSA") both initially and on reconsideration (Tr. pp. 61, 66, 71).

A de novo hearing was held before an administrative law judge ("ALJ") on March 10, 2010, at which Anderson appeared with an attorney and a vocational expert ("VE"). The ALJ found that, although Anderson suffers from severe impairments of "bipolar disorder, personality disorder and substance abuse" (Tr. p. 44), she has the residual functional capacity to perform a full range of work at all exertional levels except that she is limited to simple tasks and working with things rather than people, and any interaction with coworkers is to be casual only and incidental to the work performed (Tr. p. 47). The ALJ found Anderson can do her past relevant work as a data entry clerk (Tr. p. 48). The ALJ concluded that Anderson was not disabled at any time through the

date Anderson last had disability insured status on September 30, 2008, or through the date of the ALJ's decision on April 21, 2010.

Anderson requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 1) and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Anderson next filed this appeal for judicial review of the ALJ's decision on September 16, 2011, alleging the following grounds for relief (Doc. 11):

> 1. The ALJ did not comply with 20 C.F.R. § 404.1535 because she did not correct legal criteria in adjudication of the claim.
>
> 2. The record contains no evidentiary choices which support the residual functional capacity that the ALJ adopted.
>
> 3. The vocational testimony does not carry the Commissioner's burden of proof, because the denial is based on a hypothetical which did not reflect the claimant's functioning.

The Commissioner responded to Anderson's appeal (Doc. 12), and Anderson replied (Doc. 13). Anderson's appeal is now before the court for disposition.

## Eligibility for Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff

must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy.   42 U.S.C. 1382(a)(3).

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act.  42 U.S.C. 416(i), 423.  Establishment of a disability is contingent upon two findings.   First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. 423 (d)(1)(A).  Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. 423(d)(2).

<u>Summary of Pertinent Facts</u>

1. Medical Records

Anderson was evaluated by a Nevada psychologist, Sheri Skidmore, Ph.D. in November 2007 (Tr. pp. 201-205).  Skidmore found that Anderson could at least do simple one or two step tasks and at least help take care of a family and a household (Tr. p. 204). Skidmore further found that Anderson could get along with supervisors, coworkers and the public, could concentrate to help take care of a home and do household chores, and could concentrate for at least simple one or two step tasks.  Skidmore diagnosed:

3

Axis I-mood disorder NOS (perhaps bipolar disorder), and crack cocaine addiction (self reported in three year remission); Axis III-high blood pressure (self reported); Axis IV-lack of income, youngest child living with the father, loss of a job; Axis V-Current GAF of 60, prior GAF of 60.[1]  Skidmore noted Anderson is

---

[1] The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client.  Axis I refers to clinical syndromes, Axis II to developmental disorders and personality disorders, Axis III to physical disorders and conditions, Axis IV to psychosocial stressors, and Axis V to the global (overall) assessment of functioning.  Diagnostic and Statistical Manual of Mental Disorders, Text Revised, pp. 25-35 (4th ed. 2000) ("DSM-IV-TR").

The Global Assessment of Functioning, or GAF, score represents Axis V of the Multiaxial Assessment system.  The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client.  Diagnostic and Statistical Manual of Mental Disorders, Text Revised, pp. 25-30 (4th ed. 2000) ("DSM-IV-TR").  GAF is a standard measurement of an individual's overall functioning level.  The GAF score is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning with respect to psychological, social and occupational functioning, on a hypothetical continuum of mental health-illness.  The first number indicates the patient's current GAF, while the second number indicates the highest score reported in the previous year.  DSM-IV-TR at 32-34.  The GAF scale goes from 0-100: 91-100 - superior functioning in a wide range of activities, life's problems never seem to get out of hand, is sought out by others because of his or her many positive qualities, no symptoms; 81-90 - absent or minimal symptoms, good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns; 71-80 - if symptoms are present, they are transient and expectable reactions to psycho-social stressors, not more than slight impairment in social, occupational, or school functioning; 61-70 - some mild symptoms OR some difficulty in social, occupational or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships; 51-60 - moderate symptoms OR moderate difficulty in social, occupational, or school functioning; 41-50 - serious symptoms OR serious impairment with social, occupational, or school functioning; 31-40 - some impairment in reality testing or communication OR major impairment in several areas such as work or school, family relations, judgment, thinking, or mood; 21-30 -

taking an anti-depressant, stated that Anderson's overall outcome could improve, and noted Anderson would be competent to handle her own funds if she has been clean (from crack) for three years (Tr. p. 205).

In August 2008, Anderson was evaluated by Dr. Mark Viner, a Nevada psychiatrist (Tr. pp. 209-213).  Dr. Viner found Anderson has: Axis I-a major depressive disorder with psychosis complicated with psychostimulant abuse (methamphetamine and cocaine); Axis II-borderline personality traits; Axis III-hypertension; Axis IV-loss of children (to social services), and interpersonal, employment and housing issues; Axis V-current GAF of 40 and highest in past year was 45 (Tr. p. 212).  Dr. Viner changed Anderson's antidepressant (Lexapro) to Wellbutrin, prescribed Risperdal, agreed with inpatient care for safety, recommended aggressive psychosocial help, and ordered group therapy (Tr. pp. 213, 218).  Anderson stayed inpatient from August 8, 2008 through August 21, 2008, during which time she improved on her new medications and learned anger management skills (Tr. pp. 223-224).  Anderson received follow-up treatment in September 2008 (Tr. pp. 295-299), and May, October and November of 2009 (Tr. p. 291-294).

---

behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgement OR inability to function in almost all areas; **11-20** - some danger of hurting self or others OR occasionally fails to maintain minimal personal hygiene OR gross impairment in communication; **1-10** - persistent danger of severely hurting self or others OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death; and **0** - inadequate information. DSM-IV-TR, at 34.  Also, Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

5

Anderson had a medical evaluation in August 2008, which was normal (Tr. pp. 214-217).

Psychiatric Review Technique forms and Mental Residual Functional Capacity forms were filled out in September 2008 by Sally Skewis, a psychologist, after reviewing Anderson's medical records (Tr. pp. 238-268). When not considering the effects of Anderson's substance abuse, Dr. Skewis found that Anderson has depressive syndrome with sleep disturbance, decreased energy and thoughts of suicide, a mood disorder NOS, borderline personality traits, a mild restriction in activity of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation, each of extended duration (Tr. pp. 238-250).

Alternatively, when considering Anderson's mental impairment in conjunction with her substance abuse disorder, Skewis found Anderson has depressive syndrome with sleep disturbance, psychomotor agitation or retardation, feelings of guilt or worthlessness, difficulty concentrating or thinking, thoughts of suicide, and hallucinations, delusions or paranoid thinking, borderline personality traits, and mild restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, and one or two episodes of decompensation of extended duration (Tr. pp. 252-265). Skewis also found that, with her substance abuse disorder, Anderson has moderate limitations in

6

her ability to understand and remember detailed instructions, her ability to carry out detailed instructions, and her ability to interact appropriately with the general public (Tr. pp. 266-269).

In December 2009, Anderson admitted herself to a hospital recovery unit in Louisiana because she had run out of medication for four days, was shaky, and was starting to hear voices; she had recently moved in with her mother in Louisiana (Tr. pp. 274-275). Anderson's physical exam was normal (Tr. p. 274). Anderson was diagnosed with: Axis I-bipolar-affective disorder with psychotic features; Axis III-obesity; Axis IV-economic problems; Axis V-current GAF (on discharge) of 70 (Tr. p. 275). Anderson was prescribed Motrin (for back pain), Ambien, Abilify, Inderal, and hydrochlorothiazide (Tr. p. 275). In January 2010, Anderson was continued on Abilify and Elavil (Tr. p. 322) and she received counseling in January (Tr. p. 323), February (Tr. p. 319), and March (Tr. p. 328). In March 2010, Anderson's medications were changed to Trazadone, Lexapro, and Abilify, and April 2010 the Trazadone was discontinued and she was prescribed Vistaril (Tr. p. 327).

## 2. March 2010 Administrative Hearing

Anderson testified that she was 41 years old, was 5'3" tall and weighed 208 pounds, was right-handed, had lived with her mother and three children in her mother's house for four months, and did not have any source of income (Tr. p. 11). Anderson testified that she smokes about a pack a day, her mother buys her cigarettes, she does not drink, she has not abused illegal drugs since mid-2008,

and she has a high school education (Tr. p. 12). Anderson testified that she has worked as a loan shipper, for which she received on the job training (Tr. p. 13). Anderson testified that she can read, write, do basic arithmetic, make change, and count (Tr. p.1 3). Anderson testified that she does not drive and does not have a driver's license, although she used to have one (Tr. p. 13).

Anderson testified that she last worked in May 2006, when she worked for a month with a temporary agency, doing warehouse work (picking, packing and shipping); Anderson left because she lost interest in the job and could not concentrate (Tr. p. 14). Anderson worked as a clerk from 1993 through 1998, then began doing temporary work in 2000 (data entry/processing, receptionist, call center, scanner, and warehouse work) (Tr. pp. 14-16). Anderson testified that she worked in data entry and processing (loan clerk) for three years (Tr. p. 16).

Anderson testified that she became disabled on May 1, 2006 because that was the date she tried to commit suicide (Tr. p. 17). Anderson did only a limited amount of work after that date (Tr. p. 17).

Anderson testified she has not used illegal drugs since she was hospitalized in August 2008 (Tr. p. 18). Anderson testified that she sees Dr. Roy at the mental health center once a week and continues to take the medications he prescribes to help with her concentration and insomnia (Tr. p. 18).

Anderson testified that, during the day, she lies in bed,

8

cries a lot, watches TV, interacts with her children some days, some days she cleans, and some days she just lies around (Tr. p. 19). Anderson testified that she feels low about five to ten days a month, she feels high about four to six days a month, and the remaining days she is "normal" or "balanced" (Tr. pp. 19-20). When she feels low, Anderson does not do anything (Tr. p. 29). When she feels normal, Anderson does things with her children (Tr. p. 20). Anderson goes to the store about once a month, with her mother, just to get out of the house (Tr. pp. 20-21). Anderson testified that she does not have any physical problems (Tr. p. 21). Anderson does not visit friends or go to church or other meetings, but relatives visit her at home once or twice a week (Tr. p.21). Anderson testified that she does not have any friends or hobbies (Tr. p. 30). Anderson testified that she does household chores such as dishwashing, mopping, making beds, vacuuming and dusting four to six times a month (Tr. pp. 21-22). Anderson is able to take care of her personal needs, but has to be reminded to do so on a bad, or low, day (Tr. p. 22). Anderson testified that she watches television six to eight hours a day, does not read, and listens to music that she downloads from a computer (Tr. pp. 22-23).

Anderson testified that she has insomnia for which she takes amitriptyline (5 times a week) and Trazadone (2 times a week), and averages three to five hours of sleep at night (Tr. pp. 23-24). Anderson testified that she also sleeps two to three hours during the day (Tr. p. 24).

Anderson testified she was last hospitalized when she ran out of medication and began hallucinating (Tr. p. 24). Anderson testified that she currently sees Dr. Roy, a psychiatrist, and Dr. Orbis, a psychologist (Tr. p. 24). Anderson sees Dr. Orbis once a month (Tr. p. 25) and she sees a nurse practitioner, who also prescribes medication and counsels her (Tr. p. 25). Anderson sees a medical doctor for her high blood pressure (Tr. p. 25). Anderson testified that she still takes Ability and Zyprexa (Tr. p. 25). Anderson testified that she has medication side effects of drowsiness and weight gain (Tr. p. 25).

Anderson testified that, with her medication, she can pay attention and concentrate fifty percent of the time (Tr. p. 26). Anderson can follow simple one or two-step instructions, and can interact with and relate to a supervisor who gives her instructions (Tr. p. 26). However, Anderson testified she would have a problem interacting with coworkers who are in the same workspace but doing separate jobs, or with members of the public (Tr. pp. 26-27). Anderson testified that she worked at Integrity Solutions for two to three weeks then quit because she lost interest in her job and could not get along with her coworkers (Tr. p. 27). Anderson worked for Higher Dynamics for about one week, but could not get along with her coworkers, could not concentrate, and lost interest in the job (Tr, p. 28).

Anderson testified that she has made four suicide attempts in the last four years, the last in December 2009, and has been hospitalized for mental problems four times in the last four years

10

(Tr. pp. 28-29). Anderson testified that she thinks about suicide six to eight times a month (Tr. p. 29). Anderson's mother handles her finances (Tr. p. 28).

Anderson testified that she still has hallucinations, even with her medications (Tr. p. 28). Anderson testified that, on a bad day, she cannot carry out simple instructions consistently during an eight hour day (Tr. p. 30). Anderson also testified that she has trouble sleeping and smokes more during her manic cycles (Tr. p. 30). Anderson testified that she used to cut herself during her depression cycles, in 2008 (Tr. p. 30).

The VE testified that Anderson's past relevant work as a data entry clerk was sedentary (DOT 203.582-054, SVP 4) and her work as a receptionist was sedentary (DOT 237.367-038 (SVP 4) (Tr. p. 32).

The ALJ posed a hypothetical concerning a person 37 to 41 years old, with a high school education, with no exertional limitations, who is limited to simple work, working with things rather than with people, no public interaction, interaction with coworkers could only be casual and incidental to the work performed, and who can maintain attention and concentration for two-hour periods and pace over a forty hour week (Tr. p. 32).

The VE testified that such a person could do Anderson's past relevant work as a data entry clerk, but could not work as a receptionist (Tr. pp. 32-33). The VE further testified that such a person could also work as a dishwasher (unskilled, medium, SVP 2, SOC 35-9021, 509,550 jobs in the nation and 6080 jobs in Louisiana) (Tr. pp. 32-33).

The VE changed the hypothetical to assume the person would not be able to maintain attention and concentration for two hour periods of time or pace for a forty hour week on a sustained basis every week and would probably miss more than two to three days of work a month (Tr. p. 33). The VE testified there would not be any jobs such a person could do (Tr. p. 33).

A third hypothetical assumed a minimum of five days a month when the person is unable to carry out simple instructions, unable to perform activities within a schedule, unable to sustain an ordinary routine without special supervision, and unable to get along with coworkers or supervisors without exhibiting behavioral extremes on at least five days a month; the VE testified there would not be any work such a person could do (Tr. pp. 33-34).

### ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Anderson (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236

12

(5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing <u>Lovelace v. Bowen</u>, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. <u>Greenspan</u>, 38 F.3d at 237.

In the case at bar, the ALJ found that Anderson has not engaged in substantial gainful activity since May 1, 2006, that her disability insured status expired on September 30, 2008, and that she has severe impairments of bipolar disorder, personality disorder, and substance abuse, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 44). The ALJ then found that, as of September 30, 2008 and April 21, 2010, Anderson was still able to perform her past relevant work as a data entry clerk (Tr. pp. 48-49). The sequential analysis thus ended at Step 4, with a finding that Anderson was not disabled (Tr. p. 50).

<u>Scope of Review</u>

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether

there were any prejudicial legal errors.  McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999).  For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance.  Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971).  Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.  The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.  Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder.  Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983).  The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court.  Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981).  Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992).  The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125.  But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical

evidence."   Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988);
Dellolio, 705 F.2d at 125.

Law and Analysis

Ground 1 - Substance Abuse Addiction

First, Anderson contends the ALJ did not comply with 20 C.F.R.
§ 404.1535 because she did not apply the correct legal criteria in
adjudicating of Anderson's claim.  Specifically, Anderson contends
the ALJ failed to exclude the effects of substance abuse prior to
making her disability determination.

Anderson's burden was to show a medically determinable
impairment which caused her to be unable to engage in substantial
gainful activity.   Greenspan, 38 F.3d at 237; 20 C.F.R.
§423(d)(1)(A) and (d)(3); 20 C.F.R. §404.1508; 42 U.S.C.
§423(d)(1)(A).

Section 105 of the Contract with America Advancement Act of
1996, Pub. L. No. 104-121, 110 Stat. 847, 852-55 (1996), amended
pertinent portions of the Social Security Act to prohibit the award
of DIB and SSI to individuals disabled by alcoholism or drug
addiction.  See 42 U.S.C. §§ 423(d)(2)(C), 1382(c)(3)(J).  Under
the amended regulations, the key factor the Commissioner must
examine in determining whether drugs or alcohol are a contributing
factor to the claim is *whether the Commissioner would still find
claimant disabled* if he or she stopped using drugs or alcohol.  20
C.F.R. § 416.935(b)(1).  The claimant is the party best suited to
demonstrate whether she would still be disabled in the absence of
her drug addiction.  Thus, the claimant bears the burden of proving

that drug or alcohol addiction is not a contributing factor material to her disability.

The key factor, in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability, is whether the Commissioner would find the claimant disabled if he/she stopped using drugs or alcohol.  20 C.F.R. § 416.935(b)(1).  Evidence sufficient to support an ALJ finding on this issue is strongly dependent upon the facts in each case. Brown v. Apfel, 192 F.3d 492, 498-499 (5th Cir. 1999).

Under this regulation, the ALJ must first determine whether Anderson is disabled by her mental limitations and, if she finds Anderson disabled, she then determines which of Anderson's current mental limitations would remain if she stopped using illegal drugs, and then determine whether any or all of Anderson's remaining limitations would be disabling.  See McGoffin v. Barnhart, 288 F.3d 1248, 1251 (10th Cir. 2002); Adair v. Astrue, 2008 wl 4373012 (N.D.Miss. 2008), citing Brueggemann v. Barnhart, 348 F.3d 689, 694-695 (8th Cir. 2003).

The ALJ reviewed the psychiatric review technique forms and opinions by Skewis of Anderson's condition both with and without her drug addiction (her opinions were also reviewed and affirmed by Mark Richman, Ph.D., on reconsideration (Tr. p. 270)) and the fact that Skewis noted there was insufficient evidence of substance abuse from the alleged onset date (May 1, 2006) to August 31, 2007 (when Anderson denied any recent drug use) (Tr. p. 45).  The ALJ noted that, in November 2007, Anderson denied having used drugs in

16

the last three years (Tr. p. 45), and Anderson's "last and only admission regarding drug use" was in August and September 2008 (Tr. p. 46). The ALJ found "there was no longitudinal [sic] record of substance abuse that would result in the claimant being disabled because of substance abuse" (Tr. p. 46). The ALJ concluded that Anderson's past substance abuse was not material to her claims or to her disability determination. The ALJ then gave weight to Dr. Skewis' mental residual functional capacity form (the one that did not consider substance abuse) and, following a disability analysis, concluded that Anderson was not disabled.

Anderson complains about the ALJ's extraneous language that she found Anderson was not disabled even when considered with a substance abuse disorder (Tr. p. 46). That language was unnecessary; when the ALJ concluded Anderson had not been using illegal drugs during the relevant time periods, it became unnecessary for consider the effects of substance abuse on Anderson's ability to work. Since the ALJ's disability determination was made without regard to substance abuse (which was the ALJ found was not taking place), the ALJ's extraneous statements should be disregarded.

Anderson argues the Commissioner's decision should be automatically reversed because the ALJ should have first found her disabled, then Anderson would have had the burden of proving her substance abuse was not a contributing factor in her disability. However, the ALJ specifically found that Anderson was not using illegal drugs and Anderson has not argued otherwise. The ALJ also

found Anderson was not disabled by her mental impairments. Therefore, it was not necessary for Anderson to prove substance abuse was not a contributing factor.

On a related note, Anderson argues that Dr. Skewis' analysis of Anderson's limitations when she abuses drugs show Anderson is disabled when she abuses drugs. However, since the ALJ found Anderson had not been abusing drugs, and Anderson has not argued otherwise, Dr. Skewis' analysis of the effects of illegal drugs on Anderson is irrelevant and is not an issue in this case.

Since Anderson did not carry her burden of proving that she suffers from bipolar disorder and personality disorder which prevent her from working, substantial evidence supports the ALJ's finding that Anderson's bipolar disorder and personality disorder are not disabling.

This ground for relief is meritless.

Ground 2 - Residual Functional Capacity Assessment

Next, Anderson contends the record contains no evidentiary choices which support the ALJ's residual functional capacity assessment. Anderson argues the ALJ rejected all medical opinions as to Anderson's residual functional capacity and substituted her own opinion. However, Anderson contends that, with substance abuse, she has "marked limitations" in social functioning and her ability to maintain attention and concentration.

Since, as discussed above, Anderson's limitations due to substance abuse may not be considered when evaluating her residual functional capacity, that argument must fail. Without the effects

18

of substance abuse, Dr. Skewis found that Anderson's limitations in those areas are only moderate.   Therefore, Anderson has not shown that she has any marked limitations of mental functioning.

This ground for relief is also meritless.

Ground 3 - Vocational Expert

Anderson argues the vocational testimony does not carry the Commissioner's burden of proof because the denial is based on a hypothetical which did not reflect her mental functioning. Anderson contends the ALJ should have incorporated Anderson's "marked" restrictions in her ability to maintain concentration, persistence and pace in the hypothetical to the VE.   Anderson argues there is no evidence that supports the ALJ's residual functional capacity decision that she can work for two hours at a time and forty hours a week.   Anderson also argues the vocational testimony does not carry the Commissioner's burden of proof because the hypothetical to the VE did not reflect Anderson's actual functioning.

The ALJ stated that she gave weight to the opinion of the psychologist, Dr. Skewis, who found Anderson was only moderately limited in her ability to understand, remember, and carry out detailed instructions and in her ability to interact appropriately with the general public (Tr. p. 48).   No doctor, including Dr. Skewis, found Anderson has any marked limitations when she is not using illegal drugs.   Therefore, Anderson's argument that the ALJ erred in failing to incorporate marked limitations in the hypothetical is meritless.   Dr. Skewis' assessment of Anderson's

19

mental residual functional capacity supports the ALJ's residual functional capacity assessment of Anderson.

Anderson further contends that a "moderate" limitation in concentration, persistence and pace impairs her ability to work and that the ALJ incorrectly assumed she can concentrate for two hours at a time, and can work eight hour days and forty hours per week. However, Anderson does not explain why her "moderate" limitations prevent her from performing simple work as described by the ALJ. There is no evidence that Anderson cannot work except Anderson's own self-serving testimony.   Therefore, substantial evidence supports the ALJ's finding that Anderson can work two hours at a time and forty hours per week.  Compare, Cantrell v. McMahon, 227 Fed.Appx. 321 (5th Cir. 2007)(moderate limitations in claimant's ability to maintain attention and concentration for extended periods, to interact with the general public, and to accept instructions and respond appropriately to supervisors did not prevent him from being able to work); Beene v. McMahon, 226 Fed.Appx. 348 (5th Cir. 2007)(moderate limitations in concentration and persistence, social interactions, and understanding and memory did not prevent claimant from being mentally capable of functioning in a work setting); Fabela v. Astrue, 2011 wl 1321398, *17 (W.D.Tex. 2011)(moderate limitation in concentration, persistence and pace does not prevent claimant from performing her past relevant unskilled work).

Since the hypothetical correctly reflects Anderson's moderate restrictions, the VE's testimony provides substantial evidence

supporting the ALJ's/Commissioner's finding that Anderson is not disabled.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Anderson's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this ____ day of May 2012.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE